Good morning, Justices. I'm Linda Mullett. I represent the Durans, the appellants in the case. At the time the federal judge denied the defendant's early motion for partial summary judgment and the later renewal of those motions, the judge had decided to follow the state court results to the extent the court believed that those results impacted on the issues in the federal case. The federal judge was clear in the two previous orders denying the partial summary judgment motions that that was the plan that would be followed. The issue stated by the federal judge was whether or not the assessments were valid under Hawaii law. The state court came to trial and the state court issued its findings, conclusions and judgment entirely in favor of the association. The state court expressly found and ruled that the HHA was a valid homeowner's association under Hawaii law, Hawaii revised statute 421J. The state court also found and ruled that in equity as well, the Durans were to be bound to pay assessments and to be members of that association. The state court went so far as to issue an injunction against the Durans that they had to be mandatory members of that association so long as they owned the home in the neighborhood. Shortly after entry of the state court judgment, findings and conclusions, the federal court granted the summary judgments that had been filed very early in the case and in accordance with its previously stated intention. The federal court order quotes extensively from the findings and conclusions of the state court and essentially bars the Durans from proceeding in the federal court on those causes of action on the doctrines of collateral estoppel and res judicata. The state court judgment was not final when the summary judgment was granted by the federal court. The Durans appealed. The Hawaii appeals courts, after five years of being lodged with the courts, did invalidate the state court findings and conclusions that KHHA was a legally valid association under Hawaii law. The hundreds of thousands of dollars in attorney's fees awarded to KHHA by the state trial judge were vacated by the intermediate court of appeal because those fees had been granted under the authority of 421J. KHHA was not a validly constituted homeowner's association where the existence and the powers had to be derived from a document recorded against the property. HRS 421J, enacted first in 1997, immediately applied to all associations that were in existence on the date of the enactment because it was a statutory expression of the common law. That is, the existence and powers of a homeowner's association must be granted by and through a recorded document. Although the appellate courts held the Durans liable under an implied obligation to pay, the Durans were vindicated in their position that KHHA was asserting powers it had no legal right to impose upon the owners in the subdivision. A state court ruling in favor of Gary Roberts early on, on this very issue, became the principal basis for the Durans' decision to quit making their association payments to an association that lacked the legal authority to assess, lien, foreclose, and command mandatory membership. Okay, now just help me for a moment. So on the merits, the reason that this is not a valid organization is what? The powers that were asserted by the association were not reflected in any recorded document against any of the owners in the subdivision. Okay, so does that mean, are you claiming that your clients didn't have noticed that there was a homeowner's association? They knew that there were assessments being collected. They knew that. They did not realize the infirmity in the powers that were being asserted. And once they had lived there a couple of years and there was this state court decision in the Roberts case, they realized upon very close inspection that the association had no reflection in the recorded documents. But the court of appeals, in fact, said it doesn't matter about the applicability of whether this homeowner's association has been filed with the appropriate amendments because you had notice of its charter, which were not filed. You had notice of all of the provisions of the charter, which were not filed. And therefore, because your clients had notice of all of those, they had to pay anyway, didn't they? Yes. So, in effect, what the court of appeals said, which the Supreme Court did not undo, was you have to pay. Yes. And there is then no, if you will, effect. The information you got under the letters is you have to pay. Yes. And you do have to pay. Yes. So then, it seems to me, based on the decision of the court of appeals and the Supreme Court, your allegations for negligence or for misrepresentation are out because you do have to pay. Well, no, because at the time, the association proceeded against the selected couple. They didn't have the legal authority. They weren't legally constituted. It was only at the end of all of the litigation, at the end of all the appeals, that under the circumstances of that case, an implied obligation. There was no express obligation as required. But if you look at what we're looking about in collateral estoppel, and we look at the elements thereof, the fact that you have to pay in any event really says there is no misrepresentation. You've got to pay. You've got to pay. There is no negligence. You've got to pay. You've got to pay because of the facts that came forward in that case. Well, but the facts that came forward were the same facts that they, I mean, what facts were not known? I mean, we had the petition for the charter of incorporation, which has been filed. We have all of the particular provisions, amendments, bylaws, whatever, all filed. They are on notice with the state, on notice against your clients. They don't run with the land necessarily, but they're noticed. Covenants that run with the land is a very important right of ownership of property, and the whole time that ‑‑ I appreciate that was your argument, but that's exactly what the court of appeals said did not make any difference. The court of appeals said whether they run with the land or not has no effect. The effect is you had notice, your clients had notice of what had to be paid, and therefore, given that they had the notice, they did have to pay, and therefore, all the letters that you presented in both actions were of no validity because you had notice. The HHA did not believe that they had the right to collect the assessments. They needed the court decision that came down in this case. They needed that in order to get the law changed because it was contrary to the well‑established law. The covenants of that sort must run with the land. What I'm trying to get at to help me is that if your clients had notice of these assessments and the assessments were similar to those being collected by others, homeowners, and you and your clients knew of the existence of the obligation, how are your clients hurt by the fact that this was not properly recorded in your view? Why are they any worse off than any of the other people in the subdivision? Because by making a challenge to the legality of the association's collection of assessments and asserting its power to foreclose against properties, they became the sacrificial lamb for the huge, huge expenses that were required by the association to get its legal precedence. So it's the attorney's fees because they took this as what you're saying was kind of a test case? Yes, yes, and a lot of the papers that were put in supplemental records show that the association and its attorneys together decided to sue the Durans and get their test case up to the appellate courts to get the published decisions and then they had the law changed because the law had to be changed in order to uphold for other people the fact that no longer in Hawaii do the covenants of this sort have to run with the land. They can do pretty much what they want now with the 2008 amendment of that 421J. So the... Oh, so you think they're making this the test case? I thought you were trying to make... Oh, no, no. The association needed to do this because they knew that they weren't legally able to do these things and they needed this decision. In fact, the record shows that early on there was another finding in the state court against Benoit that was only, as in this case, under the circumstances of this case, we hold him obligated to pay. The association in the documents shows that they were very disappointed that Benoit did not appeal that decision so they could go on up, have their published decision, and have the law changed so that everything from thenceforth would be easy for them to assert. Okay, now you've used your time, but we've helped you, so let me just ask you one more question. If this was litigated in the state court, then what more do you want to litigate in federal court? Especially the FDCPA because the cases under the Federal Fair Debt Collection Practices Act make it perfectly clear that you can't just walk all over people's rights to achieve your objective. We grant that the association achieved all its objectives after many years of litigation against these parties, the Durants, but in doing so, violations of the act occurred all the way through. Now your position is that under the Federal Fair Debt Collection Act, the Home Owners Association is a debt collector. Is that correct? The attorneys are for certain. The association may be, if it is held that the concerted action of the attorneys and this association that made a decision jointly to go after the Durants when they owed under $500 was the... Okay, now help me. What is their specific authority to support your position that the attorneys for a creditor are debt collectors under the Federal Fair Debt Collection Act? Well, the attorneys are. I mean, all of the cases under the FDCPA show that if they pass the threshold of being debt collectors in the percentage of cases they take, then the attorneys are not exempted. These are attorneys for a client... Right. ...who is a creditor. Right. So what is the strongest case that we look to to say that those attorneys are subject to liability? What was the strongest? I probably have briefed it. I am not sitting here with it. Okay. But the case law is very clear. There have been Ninth Circuit cases as well as all over that definitely the attorneys for a creditor are not exempt under the Act. Now, it's only the Maxwell case that gives the suggestion that if there is a concerted decision, a concerted action on the part of the attorneys for the creditor and the creditor, that the creditor may lose its exempt status. And I have advanced that in the briefs. Okay. I can't say that it's the law yet. I can say that one case... That's what I wanted to say. All right. You have used your time, and I think we understand your position. All right. Thank you. Good morning. My name is John Price, and I have two other counsel here. We've split up the time, so I'll try to be quick and address an overview of our position. And Mr. Hirohiko, in particular, will speak about fair debt collection. As I see the case, the issue is whether or not Judge King was correct in granting summary judgment when he did and as he did, and I think the answer to that is definitely yes. On any summary judgment motion, there are two issues. Are there genuine issues of material fact? And is the judge correct on the law? In this case, there were no genuine issues of material fact. In fact, the Dorans had also moved for summary judgment. So we have both sides saying there are no genuine issues of material fact and telling the trial judge to make a decision. He did so. And although there's a lot of briefing about collateral estoppel and res judicata, the fact is Judge King could have made his decision the first time the motion came before him, a year and a half before it was decided. What he chose to do was wait for the Maui trial court to have its collection case because he basically deferred and gave some courtesy to that court to decide the validity of the debt. And although he wasn't bound to follow it and he didn't feel like he was constrained by collateral estoppel, which is clear from the second order on that subject when he denied our motions and said bring them back later after the trial, he did use those words in the final order. What was this? A sort of an extension, informal extension? Sort of. He was, as I see it, he was giving courtesy or some time to the trial court on Maui to get through the collection action and let a state trial judge in the first instance make a decision as to whether the debt was valid without one of the parties coming before that judge and saying, well, the federal court in Honolulu just ruled the debt was or wasn't valid, so your case is out the window here, Judge. Judge King didn't do that. He held back, let the trial go forward, and he said he would be inclined to follow what the state judge did in that case. It was a bench trial. But it's clear from his order he didn't feel like he had to, that his hands were tied. As we all know, he's free to make his decision based on what he thinks the state law will be or should be. In this case, he let the state court trial level run its course, had the trial, and then he ruled on the summary judgment. Time has shown that he was absolutely correct. The debt was valid. The Durans were ordered to pay it by not one but two appellate courts. It's over. The defense did not pay it. So what does that do to the FDCPA claim? That pretty well takes it away as far as the association goes because we're just a creditor. We're not a debt collector. The association hired counsel to collect money they had coming. The state court said, yes, indeed, you have a valid debt there, and so I don't believe that the association has fair debt collection liability when they hire counsel to collect a valid debt. What evidence is there in this record about these attorneys' practice to collect debts? Whether they satisfy the threshold. What evidence is there in the record? I mean, I looked for the evidence here because one of the potential things that the plaintiffs suggest is that they should have been able to amend their complaint and therefore come up with a new allegation, if you will. So what evidence is there that this attorney firm collects debts? There isn't any, as Judge King noted in his order, and it was the Durans' responsibility to put that evidence before the court, either in opposition to the defendant's summary judgment motions or in support of their own summary judgment motion. Their lack of evidence on that subject can't be blamed on the defendants. There was never even a request under Rule 56F for more time to do discovery. So the Durans were ready to proceed on summary judgment, and so were the defendants. They felt the record had all the facts necessary. As Judge King ruled, they were wrong, but it wasn't due to a lack of trying. It was a lot of discovery, and as I noted, we're talking about a third amended complaint already in this case, so they had chances to amend and use them. The judge found there was no evidence that KHA was a debt collection business, that it doesn't do anything but collect its own debts, and that therefore it was not a debt collector. And then Judge King also said there was no evidence in the record to suggest the attorneys were debt collectors. I guess that was what I was focusing in on, because I understood it was on summary judgment, and therefore I was focusing in on the evidence counsel would have had to present. Is your co-counsel going to address this? Yes, he's standing up. Perhaps we should hear from him. Are there any other questions regarding the association? All right. Thank you. Thank you. I'm Keith Hiraoka, and I represent Joyce Neely, Gisela Iglesias, and Neely and Anderson, and my clients are not debt collectors. In response to Judge Smith's question, the Grants filed a motion for partial summary judgment in the district court on the issue of the Fair Debt Collection Practices Act claim. They submitted one piece of paper in support of their allegation that my clients were debt collectors, and that was a copy of a yellow pages listing. That's it. In response, my clients presented declarations that bring themselves, that brought themselves into the exception for the definition of debt collector under the statute. This isn't a case where a consumer receives a notice in the mail that the consumer owns $40 for a magazine subscription that the consumer doesn't remember ever ordering. This is a case where my clients were retained in February of 1999 before the DURAMs were in default. While the DURAMs were still making the payments of assessments, but in response to a newsletter that the DURAMs circulated to all owners of Kahanapali Hillside, questioning the association's ability to collect assessments. That's when my clients were first retained. They represent the association on this issue, and they responded to the DURAMs. They responded to the newsletter, and all of this is in the record before Judge King in my client's opposition to the DURAMs motion for partial summary judgment. What did the yellow, the advertisement in the yellow pages say? It said that my clients... Oh, I can't remember. It's Exhibit 11 to the plaintiffs, to the DURAMs motion for partial summary judgment. It says, Neely and Anderson, attorneys at law, representing condominiums, co-ops, and community associations, and it describes the nature of services provided. So it didn't say debt collectors? It said collections. It didn't say debt collectors. It didn't establish what percentage of my client's practice was collecting debts for others. It didn't say what was collected. The word debt does not appear anywhere in the yellow pages advertisement. So then in response to that advertisement, you said your clients came back with some affidavits. Yes, my clients... What did they say with respect to the threshold criteria? They said that they were first retained to represent the association in connection with the DURAMs. Did they describe their practice in general? No. They did not. There was no evidence in the record of the nature of my client's practice. I'm sorry. What's the law in this area? When does an attorney become a debt collector? The Jenkins case says that attorneys are no different from anybody else in deciding whether they come within the definition of debt collector, the statutory definition of debt collector. So if the attorney regularly collects debts owed to others, then unless an exception applies, the attorney would be a debt collector. We have a case called Fox versus Citicorp where we sort of said 80% of the attorneys practiced. Well, Your Honor, there was no statistical evidence in the record before Judge King of what... I didn't see any. And there was none. I checked last night. And the burden, I take it... Is on the plaintiffs. And so just on that basis alone, Judge King can be affirmed. Okay. Does the Court have any other questions? I'm free to be in. Thank you. Thank you. Thank you. The case just argued was submitted for decision. We'll hear the next case, which is United States versus SovLon. Well, if you could leave it with one sentence that we permitted you to go way over. The evidence of the nature of the attorney's practice is presented in the evidence of the reply brief. So it is there. It is there. In the reply brief filed in this Court? Yes. All right. Thank you. Thank you. As I said, the case just argued is submitted for decision. And we'll hear the next case, which is United States versus SovLon. Thank you. You may proceed. Mr. Stewart.
judges: Schroeder, Paez, Smith